304 Ga. 820
FINAL COPY

S18G0199. IN THE INTEREST OF H. G. D. et al., children.

ORDER OF THE COURT.

After careful review of the full record, the briefs of the parties, and the oral arguments, the Court has determined that the writ of certiorari in Case No. S18G0199 was improvidently granted. Accordingly, the writ is vacated, and the petition for certiorari in Case No. S18C0199 is denied.

*Melton, C. J., Nahmias, P. J., Benham, Hunstein, Blackwell, Boggs, and Peterson, JJ., Judge Cindy Morris and Judge Arthur L. Smith III concur. Warren and Bethel, JJ., disqualified.*

NAHMIAS, Presiding Justice, concurring.

I join the Court's order vacating the writ of certiorari as improvidently granted, with the following explanation. In this case, the Division of Family and Children Services (DFCS) initiated a dependency proceeding under Georgia's new Juvenile Code against the mother of two children. The juvenile court ultimately adjudicated the children as dependent in the mother's care and ordered them into the temporary legal custody of their maternal grandparents. The permanency plan was reunification with the mother, but before she fulfilled the plan, DFCS presented the juvenile court with evidence that one of the children had been abused by one of the grandparents. The court then issued an order modifying its prior custody order by placing the children in the temporary legal custody of DFCS.

We granted the grandparents' petition for certiorari to address their argument that the children could be removed from their temporary custody only through a separate dependency proceeding against them. The Court of Appeals concluded that the juvenile court was not required to follow the dependency

2

adjudication process set forth in OCGA § 15-11-181 and to find the children dependent in relation to their temporary custodians as well as their parent, but instead could modify its temporary custody order pursuant to OCGA § 15-11-32 (b) until a permanent placement was found. See In the Interest of H. G. D., 342 Ga. App. 651, 654 (2) (c) (803 SE2d 788) (2017). Although it would have been preferable for the Court of Appeals to focus more closely on the text and overall structure of the new Juvenile Code in reaching this conclusion, having now considered the question fully, that is the correct conclusion, and there is no need for this Court to speak further on the issue.

In reviewing the case, however, I noted an apparent error in the Court of Appeals's treatment of the juvenile court's authority to modify its orders pursuant to OCGA § 15-11-32.[1] The Court of Appeals held that the juvenile

---

[1] OCGA § 15-11-32 says in full:

(a) An order of the court shall be set aside if:
(1) It appears that it was obtained by fraud or mistake sufficient therefor in a civil action;
(2) The court lacked jurisdiction over a necessary party or the subject matter; or
(3) Newly discovered evidence so requires.
(b) An order of the court may also be changed, modified, or vacated on the ground that changed circumstances so require in the best interests of a child except an order of dismissal following a contested adjudicatory hearing.
(c) Except as otherwise provided in Code Section 15-11-602, an order committing a child to DJJ [the Department of Juvenile Justice] may only be

3

court had the authority to modify its temporary custody order under OCGA § 15-11-32 (b) sua sponte, without a petition for relief being filed by someone listed in subsection (e) of that statute. See H. G. D., 342 Ga. App. at 652-653 (1). The Court of Appeals also held that because no party had petitioned for the modification order under subsection (e), the juvenile court was not required to comply with the notice and hearing requirements set forth in subsection (f). See id.

The first of these holdings appears correct, but the second may well be wrong. After the Court of Appeals decided this case, this Court decided In the

modified after such child has been transferred to DJJ custody upon motion of DJJ.

(d) An order of adjudication of delinquency by a court may be modified or vacated if the child was adjudicated for a delinquent act for a sexual crime as defined in Code Section 16-3-6 and such crime resulted from the child being:

    (1) Trafficked for sexual servitude in violation of Code Section 16-5-46; or

    (2) A victim of sexual exploitation as defined in Code Section 49-5-40.

(e) Any party to the proceeding, the probation officer, or any other person having supervision or legal custody of or an interest in a child may petition the court for the relief provided in this Code section. Such petition shall set forth in clear and concise language the grounds upon which the relief is requested.

(f) After a petition seeking relief under this Code section is filed, the court shall fix a time for hearing and shall cause notice to be served on the parties to the proceeding or those affected by the relief sought. After the hearing, the court shall deny or grant relief as the evidence warrants.

(g) This Code section is intended to be retroactive and shall apply to any child who is under the jurisdiction of the court at the time of a hearing, regardless of the date of the original delinquency order.

4

Interest of I. L. M., 304 Ga. 114 (816 SE2d 620) (2018), another case involving the new Juvenile Code. In I. L. M., we explained that even though the new code's provision for continuances beyond the time limits within which the code says hearings must be held refers only to requests made by "an attorney for a party," OCGA § 15-11-110 (a), courts generally have the inherent power to grant continuances to control their dockets, and "we will not lightly find that a statute has eliminated [that power] in a particular context without a clear statement to that effect by the General Assembly." I. L. M., 304 Ga. at 118 n.12. However, we also held that the General Assembly has authority "to guide or limit judges' exercise of [that] inherent power" and that the legislature had done just that by enacting the procedural and substantive requirements in OCGA § 15-11-110; thus, "if a judge wishes to continue a proceeding to which OCGA § 15-11-110 applies beyond the time limits of OCGA § 15-11-181, he or she must first comply with the requirements of OCGA § 15-11-110." I. L. M., 304 Ga. at 118 n.12.

Courts generally have inherent power to modify their orders (at least while they retain jurisdiction over the orders); indeed, the Court of Appeals cited cases it had decided under the old Juvenile Code that recognize this principle

5

specifically as to juvenile courts and temporary custody orders, see H. G. D., 342 Ga. App. at 653 (1). Nothing in OCGA § 15-11-32 clearly eliminates that power in dependency cases. Thus, under the reasoning of I. L. M. and in accord with the Court of Appeals's first holding, the juvenile court in this case could modify its order awarding temporary custody to the grandparents sua sponte, notwithstanding subsection (e)'s reference to modification petitions being brought by parties and other specified persons. However, under the reasoning of I. L. M. and contrary to the second holding of the Court of Appeals, when the juvenile court exercised this power, it was required to comply with the procedural requirements included in the statute — namely, the requirements in subsection (f) that when relief is sought under this statute, "the court shall fix a time for hearing and shall cause notice to be served on the parties to the proceeding or those affected by the relief sought."[2]

This is not the case, however, to definitively address the application of OCGA § 15-11-32. In granting the grandparents' petition for certiorari, we did not pose a question about OCGA § 15-11-32, and the parties have not fully

---

[2] Notably, under the old Juvenile Code, the hearing required before the juvenile court granted or denied relief under the order-modification statute could be "informal," see former OCGA § 15-11-40 (d). The new Code eliminates that qualifier and requires a regular hearing.

briefed its application in this case. Moreover, even if the Court of Appeals erred in holding that the notice and hearing requirements of OCGA § 15-11-32 (f) did not apply, it is not clear that the juvenile court's modification order would be undermined. The grandparents specifically directed the juvenile court clerk not to include in the record on appeal the transcript of hearings related to the modification order, and it is possible that the grandparents forfeited any procedural objections during those hearings or that what transpired in the hearings amounted to substantial compliance with subsection (f).

Finally, the Court of Appeals did not *prohibit* juvenile courts from complying with OCGA § 15-11-32 (f)'s procedural requirements before modifying temporary custody orders in dependency cases; it held only that such compliance was not *required*. In light of I. L. M., juvenile courts may be wise to provide notice and hold hearings before modifying temporary custody orders in dependency cases. If a juvenile court does not comply with subsection (f), the issue can be raised again in the Court of Appeals, which can reconsider its holding in this case under I. L. M.

With these understandings, I join the Court's decision to vacate the writ of certiorari granted in this case.

I am authorized to state that Justices Blackwell and Peterson and Judge Arthur L. Smith III join in this concurrence.

Decided December 10, 2018.

Certiorari to the Court of Appeals of Georgia — 342 Ga. App. 651.

Heath C. Bassett, for appellant.

Christopher M. Carr, Attorney General, Annette M. Cowart, Deputy Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Penny L. Hannah, Andrew A. Pinson, Victoria C. Powell, Assistant Attorneys General, Sarah H. Warren, Solicitor-General, Ross W. Bergethon, Deputy Solicitor-General, for appellee.